IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

DISABILITY RIGHTS OF
WEST VIRGINIA, et al.,

       Plaintiffs,

v.              CIVIL ACTION NO. 2:17-cv-01910

BILL CROUCH, in his official capacity
as Secretary of the Department of Health
and Human Services of the State of
West Virginia,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Defendant's Motion to Dismiss, (ECF No. 11), and Plaintiff Disability Rights of West Virginia's ("DRWV") Motion for Award of Service Expenses and Attorney Fees, (ECF No. 21). For the reasons discussed below, the Court **GRANTS** the motion to dismiss, (ECF No. 11), and **DENIES** the motion for expenses and attorney's fees, (ECF No. 21).

*I. BACKGROUND*

This case arises out of a decision by the West Virginia Department of Health and Human Services ("DHHR") to hold in abeyance certain Medicaid fair hearings pending the outcome of *T. v. Crouch*, which is currently before this Court. (ECF No. 1 at 1; *see* Civil Action No. 2:15-cv-09655.) In that underlying case, individuals enrolled in West Virginia's

1

Intellectual/Developmental Disability Home and Community Based Services waiver program ("I/DD Waiver Program") are challenging reductions in their benefits that began in 2015. DRWV brought this action against Defendant, alleging that DHHR's decision to hold certain hearings in abeyance pending the underlying litigation challenging aspects of the I/DD Waiver Program is a violation of federal law and regulations governing the state's Medicaid program by failing to hold recipients' Medicaid fair hearings within the required period. (ECF No. 1 at 7–10 (citing 42 U.S.C. § 1396(a)(3), (8); 42 C.F.R §§ 431.220, 431.244(f), 435.930).) Because of these allegedly unlawful actions, DRWV seeks injunctive and compensatory relief. (*Id.* at 10–11.)

Defendant filed the current Motion to Dismiss on June 5, 2017. (ECF No. 11.) DRWV responded to the motion on June 8, 2017, (ECF No. 14), and DRWV filed its reply on June 15, 2017, (ECF No. 15). DRWV filed its Motion for Award of Service Expenses and Attorney Fees on August 15, 2017, (ECF No. 21), and Defendant responded on August 29, 2017, (ECF No. 23). Accordingly, the two motions are briefed and ripe for adjudication.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 8(a), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). The rule requires the plaintiff to allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, and the factual allegations must be taken as true and construed in the light most favorable to the plaintiff. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). Consequently, a motion to dismiss should be granted

only if, after accepting all well-pleaded allegations contained in the complaint as true, the plaintiff fails to allege enough facts to state a cognizable legal claim that is plausible on its face. *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level[,]" and if a plaintiff does not "nudge" his claim "across the line from conceivable to plausible[,]" then the complaint should be dismissed. *Id.* at 555, 570. "Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325 (4th Cir. 2001) (citing *DM Research v. Coll. of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999)).

## III. DISCUSSION

The individuals on whose behalf DRWV sued are recipients of benefits under West Virginia's I/DD Waiver Program, which provides for qualified individuals with intellectual and development disabilities an annual budget by which those recipients may purchase home and community-based services. (*See* ECF No. 1 at 7 ¶¶ 29–30.) The Complaint states that West Virginia's Medicaid program must "provide Medicaid applicants and recipients with recourse to an administrative fair hearing when Medicaid benefits are denied, reduced, or terminated, or when a claim for medical assistance 'is not acted upon with reasonable promptness.'" (*Id.* ¶ 31 (citing 42 U.S.C. § 1396a(a)(3); 42 C.F.R. § 431.220).) DHHR's Board of Review ("BOR") is the entity in front of which I/DD Waiver Program recipients may seek a fair hearing under federal law, and the Complaint notes that BOR must "'take final administrative action' on a fair hearing request 'within 90 days' of the date the fair hearing was requested." (*Id.* at 8 ¶ 34 (citing 42 C.F.R. § 431.224(f)).)

The Complaint alleges that "[s]tarting as late as August of 2016, BOR established a practice of holding Medicaid fair hearings in abeyance pending any settlement, voluntary dismissal, compromise, final decision by the Court, or becomes moot due to the expiration of the Appellant's current service year in the *Michael T.* litigation, Civil Action No.[ ]2:15-CV-09665." (*Id.* ¶ 37 (internal quotation marks omitted).) DRWV claims that one I/DD Waiver Program recipient requested a fair hearing but never received one and was never informed of BOR's decision to hold the hearings in abeyance. (*Id.* ¶ 38.) The organization also alleges that another recipient was informed via telephone that his or her requested fair hearing was being held in abeyance. (*Id.* ¶ 39.) Because of these actions, DRWV argues that program recipients were forced "to go without hearings and final administrative decisions for a time extending beyond 90 days," resulting in a loss of "waiver benefits needed for long-term maintenance of their integrated living arrangements." (*Id.* at 9 ¶ 43.)

A. *Motion to Dismiss*

Defendant's motion is premised on two grounds. First, Defendant argues that DRWV's equitable claims are moot given certain actions DHHR has taken since the Complaint was filed. (*See* ECF No. 12 at 3.) Specifically, Defendant attaches to his motion an affidavit from Ms. Cheryl Henson, BOR Chairman, noting that all I/DD Waiver Program recipients with Medicaid fair hearings held in abeyance received letters notifying them that their hearing was scheduled for a status conference to set a final hearing date. (*See* ECF No. 11-1.) Ms. Henson further provided that "members of the I/DD Waiver program [who] have filed for a Medicaid fair hearing, and whose case has not already been adjudicated, will have a final hearing scheduled in the immediate future, unless he or she exercises his or her right to request a continuance of such hearing." (*Id.*

4

at 2.) Second, Defendant avers that DRWV does not have standing to pursue the compensatory or other monetary relief requested on behalf of the I/DD Waiver Program recipients because there are no named individual plaintiffs in this case and the organization lacks representational standing. (*See* ECF No. 12 at 4–5.) In terms of representational standing, Defendant states that DRWV cannot meet the third prong of the Supreme Court's test in *Hunt v. Washington State Apple Advertising Commission* because "[t]he very nature of the relief sought in the Complaint is individualized and will require participation by each and every such individual to determine the appropriate alleged amounts owed to each individual and any alleged harm that each individual suffered." (*Id.* (citing 432 U.S. 333, 343 (1977)).)

In DRWV's response to the motion, it argues that "Defendant's summation of the issues at large grossly oversimplifies the matters at controversy and the relief sought by DRWV through the Complaint."[1] (ECF No. 14 at 2.) DRWV claims that the issues in this case are not moot as Defendant suggests because DHHR's voluntary cessation of conduct does not guarantee that the alleged misconduct will not occur again in the future. (*See id.* at 3–4 ("[I]t is quite reasonable to assume based on the increase in litigation activity involving the WV I/DD waiver program that

---

[1] Plaintiff states that the following is at issue in its Complaint:

> 1) The violation of *42 U.S.C. § 1396(a)(8)* and the Due Process Clause of the 14th Amendment.; 2) The prevention of future Constitutional violations (i.e. The Defendant holding future Medicaid Fair Hearings in abeyance); 3) Require the Defendant to develop specific policies and procedures to implement the timeline required by federal law thereby ensuring that all Medicaid Fair Hearings meet the reasonable promptness standard required by federal law.; 4) Immediately granting I/DD waiver recipients, who did not receive a final administrative decision within 90 days, the relief they sought in their fair hearing requests for the remainder of their budget year.; 5) Immediately granting general compensatory relief in the form of the relief sought in requests for fair hearings for period of time extending beyond their current budget year for services not provided or equivalent monetary damages.; 6) Awarding reasonable attorney's fees, as provided by 42 U.S.C. § 1988.; 7) Awarding of costs and disbursements; and 8) Granting such other relief and further relief as the Court deems equitable and just.

(ECF No. 14 at 2 (emphasis in original).)

new abeyance orders could be issued by the BOR.").) Further, DRWV states that it is seeking a claim pursuant to 42 U.S.C. § 1983 "to address any failure by Defendant to comply with the reasonable promptness provision of the Medicaid Act," which encompasses a private right of action not mooted by DHHR's change in practice. (*See id.* at 4–5; *see also id.* at 6 ("The violation of the promptness period is the core injury here not the denial of the fair hearings.").) Lastly, DRWV argues that it has standing in the representational context because the damages suffered and remedies sought are "common to the group," meaning that the individually harmed I/DD Waiver Program recipients do not need to participate or be named in this litigation. (*See id.* at 5–6 (noting also that the organization itself "has been and continues to be injured by this suit").)

Defendant's reply contends that many of DRWV's arguments are red herrings in the sense that DRWV ignores the crux of *Hunt*'s third prong regarding the necessity of individual participation in this suit based on the relief requested. (*See* ECF No. 15 at 1, 2 ("DRWV's argument can be summed up as follows: the case is not moot and the organization has standing because Defendant could reinstate the abeyance orders at any time and there is case law that states a § 1983 claim is the appropriate vehicle for an individual to pursue a private action for violation of a Medicaid Act provision.").) Defendant states that DRWV's belief that DHHR may decide to reinstate the abeyance orders sometime in the future is "completely speculative and not actionable . . . ." (*Id.* at 2.) Defendant also contests DRWV's discussion regarding its § 1983 claim, noting that the main case cited in support of that discussion concerned "an *individual* recipient . . . who was *personally* aggrieved . . . and, therefore, filed a *personal* action . . . to recover *personal* damages." (*Id.* at 3 (emphasis in original) (citing *Doe v. Kidd*, 501 F.3d 348 (4th Cir. 2007)) (explaining that the other cases cited by DRWV discussed similarly situated individual plaintiffs).)

6

Because no individuals are seeking relief in this lawsuit, Defendant avers that "DRWV, as an organization, cannot pursue such claims pursuant to its alleged representational standing." (*See id.* at 4.)

1. Mootness

It is well settled that "[f]ederal courts have no power to hear moot cases, and . . . a case can become moot at any time . . . ." *Brooks v. Vassar*, 462 F.3d 341, 348 (4th Cir. 2006) (citing *Mellen v. Bunting*, 327 F.3d 355, 363–64 (4th Cir. 2003)), *cert. denied*, 550 U.S. 934 (2007); *see also City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 288–89 (1982). One way in which a case can become moot is by a change in factual circumstances if the change renders the issues in the case no longer "live." *See Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011) (citations omitted); *see also Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983) ("Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies."). "Generally speaking, one such [factual] circumstance mooting a claim arises when the claimant receives the relief he or she sought to obtain through the claim." *Simmons*, 634 F.3d at 763 (alteration in original) (quoting *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002)). However, "[a] case is not moot . . . if a party can demonstrate that the apparent absence of a live dispute is merely temporary abeyance of a harm that is 'capable of repetition, yet evading review.'" *Brooks*, 462 F.3d at 348 (quoting *Mellon*, 327 F.3d at 364).

If a defendant voluntarily ceases challenged conduct, the court may choose nonetheless to "exercise its power to enjoin the defendant from renewing the practice . . . ." *City of Mesquite*,

455 U.S. at 289. The Supreme Court has announced a "stringent" test for deciding whether a defendant's voluntary conduct is sufficient to moot a case:

> A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (alteration omitted) (internal quotation marks omitted) (citations omitted); *see also Wall v. Wade*, 741 F.3d 492, 497 (4th Cir. 2014). The Fourth Circuit has held that this burden is met and "a governmental entity's change of policy renders a challenge moot when the governmental entity 'has not asserted its right to enforce [the challenged policy] at any future time.'" *Porter v. Clarke*, 852 F.3d 358, 360, 364 (4th Cir. 2017) (alteration in original) (quoting *Telco Commc'ns, Inc. v. Carbaugh*, 885 F.2d 1225, 1231 (4th Cir. 1989)).

Here, DRWV's claims arose from DHHR's decision to issue orders to hold certain Medicaid fair hearings in abeyance. DRWV argues in its response that the abeyance orders are not the crux of this action but rather the Complaint arises from BOR's failure to comply with federal law's promptness period. However, the Court recognizes that DRWV filed this suit with the aim of compelling DHHR to schedule Medicaid fair hearings being held in abeyance and that this objective will be satisfied if BOR conducts those hearings. Defendant represents in his motion and through Ms. Henson's affidavit that all cases in which a recipient's hearing was held in abeyance were scheduled for a status conference to set a final hearing and that, therefore, all members with a hearing held in abeyance "will have a final hearing scheduled in the immediate future . . . ." (ECF No. 11-3 at 2; *see also* ECF No. 12 at 3.) Further, in a telephonic status conference held by the Court on November 15, 2017, Defendant represented that there were no

hearings held in abeyance at that time based on actions taken by DHHR since the commencement of this lawsuit. Based on this representation, DRWV agreed that its previously filed motion seeking preliminary injunctive relief was moot. (*See* ECF No. 28.)

There has been no suggestion by Defendant in the briefing or during the telephonic status conference that any hearings will be held in abeyance in the future. Thus, there is no reason to believe that the challenged conduct will recur. *See Friends of the Earth, Inc.*, 528 U.S. at 189; *see also Simmons*, 634 F.3d at 763. Without ongoing conduct or any suspicion that previous conduct will recur, the Court finds that DRWV's requests for declaratory and injunctive relief regarding DHHR's former practices are now moot. Defendant has met his burden in demonstrating that this issue is no longer live insofar as it relates to the aforementioned relief, and this Court will not exercise jurisdiction to determine the constitutionality or legality of the ceased conduct. *See Brooks*, 462 F.3d at 468. This leaves for discussion the compensatory claims raised by DRWV in its Complaint.

    2. <u>Standing</u>

"To establish standing, a plaintiff must show: (1) an injury in fact; (2) a sufficient causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision." *Wikimedia Found. v. NSA*, 857 F.3d 193, 207 (4th Cir. 2017) (citation omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). An organization can allege standing under two distinct theories. *See Md. Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246, 1250 (4th Cir.) [hereinafter *MHCA, Inc.*], *cert. denied*, 502 U.S. 939 (1991). First, the organization "may have standing in its own right to seek judicial

relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Warth v. Seldin*, 422 U.S. 490, 511 (1975). Alternatively, the organization "may have standing as the representative of its members who have been harmed." *MCHA, Inc.*, 933 F.2d at 1250 (citing *Hunt*, 432 U.S. at 333; *Warth*, 422 U.S. at 511).

Thus, if an entity "lacks the 'personal stake' in the outcome of th[e] litigation essential to its invocation of federal-court jurisdiction" or even if it is "not a traditional voluntary membership organization . . . for it has no members at all," the organization is not automatically precluded from asserting the claims of its constituency. *See Hunt*, 432 U.S. at 341–44 (citations omitted). The following elements are considered the "prerequisites to 'associational standing:'"

> (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Id.* at 343; *see also Am. Humanist Ass'n v. Md.-Nat'l Capital Park & Planning Comm'n*, 874 F.3d 195, 203–04 (4th Cir. 2017).

Defendant argues in his motion that the damages claimed here are similar to those claimed in the seminal case on representational standing, *Warth v. Seldin*, in that they "are not common to the entire membership" and that any alleged injury suffered "is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof." (ECF No. 12 at 4 (quoting 422 U.S. at 515).) As such, Defendant avers that DRWV cannot pursue the damages borne by I/DD Waiver Program recipients because they are individualized and the relief sought "will require participation by each and every such individual to determine the appropriate alleged amounts owed to each individual and any alleged harm that each individual suffered." (*Id.* at 5.) Although DRWV concedes that "the Complaint does ask for relief for these

10

individuals," it disputes Defendant's claim that it is necessary for the individuals to participate in this suit. (*See* ECF No. 14 at 6–7 ("The necessary remedy here, sought through a § 1983 claim, is common to the group.").) DRWV also contests Defendant's representation that the organization "cannot pursue the personal damages requested in the Complaint," (ECF No. 12 at 5), because DRWV "has been and continues to be injured by this suit." (*See* ECF No. 14 at 6 (noting the resources DRWV has expended throughout the course of this litigation and citing the request for attorney's fees and costs in the Complaint's prayer for relief).)

While the injunctive and equitable relief has been dismissed as moot, DRWV's compensatory claims brought pursuant to 42 U.S.C. § 1983 remain. To determine whether DRWV has standing to pursue these claims, the Court will assume, without deciding, that the first two elements of representational standing are met and focus instead on the third element, which the parties contest. (*See* ECF No. 12 at 4–5; ECF No. 14 at 5–6.) DRWV seeks the following relief for these claims in its Complaint:

> (5) Immediately granting I/DD Waiver recipients, who did not receive a final administrative decision within 90 days, the relief they sought in their fair hearings request for the remainder of their budget year;
>
> (6) Immediately granting general compensatory relief in the form of the relief sought in the requests for fair hearings for [a] period of time extending beyond their current budget year for services not provided or equivalent monetary damages . . . .

(ECF No. 1 at 11.) To determine what relief each I/DD Waiver Program recipient sought in their fair hearings or to calculate the equivalent monetary value for those services would require evidence unique to those individuals. This is unlike the situation in *Hunt* where the Supreme Court noted that the third element favored the association because the claims did not require "individualized proof" from the various apple producers represented. *See* 432 U.S. at 344. Here,

to grant the requested relief under § 1983, the Court would need particularized proof from affected recipients, such as the following: their allocated budget and approved services for the previous year, their budget and requested services for the current year, and the reconsideration and appeals process they have undergone this year, including their individual requests to the BOR for a Medicaid fair hearing currently held in abeyance.

The Court is unpersuaded by DRWV's claim that "[t]he necessary remedy . . . is common to the group."[2] (ECF No. 14 at 6.) While multiple individuals allegedly were denied a prompt hearing—a common harm—determining their individual monetary relief is not a group exercise. The damages alleged "are not common to the entire membership, nor shared by all in equal degree." *Cf. Warth*, 422 U.S. at 515–16. As Defendant notes, DRWV "has filed the above-captioned lawsuit in its own name, and has not identified any individuals in its pleadings supposedly aggrieved by the allegations contained therein." (ECF No. 12 at 2.) Because no individuals are named plaintiffs to this suit, the Court is unable to determine the personal relief to which they may be entitled. As such, it is inappropriate for the Court to allow DRWV to invoke the judicial process on behalf of affected I/DD Waiver Program recipients as DRWV itself has no standing to pursue their compensatory claims.

B. *Motion for Award of Service Expenses and Attorney Fees*

DRWV seeks an order awarding it $25.00 for service expenses and $1,232.50 for attorney's fees because Defendant refused to waive the summons in this case, without good cause, and

---

[2] The Court similarly does not agree with and will not expand on DRWV's claim that it has, in fact, alleged monetary injury to itself in the form of attorney fees and costs. (*See* ECF No. 14 at 6.) Those expenses arise directly out of the individual claims for monetary relief DRWV attempts to bring on behalf of the I/DD Waiver Program recipients. If the Court allowed DRWV to assert standing on this argument alone, an organization could raise any claim on behalf of its members, regardless of the individualized nature of the injuries alleged. The focus of the discussion must remain on the monetary harm allegedly suffered by the individuals as a result of Defendant's conduct.

ignored DRWV's requests for payment of service fee. (*See* ECF No. 21 at 1–3.) In seeking these amounts, DRWV relies on Federal Rule of Civil Procedure 4(d)(2). (*Id.* at 2–3.) In Defendant's response to the motion, he concedes "that DHHR refused to waive service of process in this matter . . . ." (ECF No. 23 at 1.) Nonetheless, the response argues that Defendant, who is sued in his official capacity as Secretary of DHHR, is considered a government agency for purposes of Rule 4(d) and is not subject to the rule's waiver of service provisions. (*See id.* at 2–3.) DRWV did not file a reply in support of its motion.

Federal Rule of Civil Procedure 4(d) provides, in pertinent part, the following:

(1) An individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses of serving the summons. The plaintiff may notify such a defendant that an action has been commenced and request that the defendant waive service of a summons.

. . .

(2) If a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court must impose on the defendant:

(A) the expenses later incurred in making service; and

(B) the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses.

Fed. R. Civ. P. 4(d)(1), (2). Subsection (e) cited in Rule 4(d)(1) relates to individuals "in a judicial district of the United States" while subsection (f) refers to individuals in a foreign country. *See* Fed. R. Civ. P. 4(e), (f). Neither of those subsections applies to "a minor, an incompetent person, or a person whose waiver has been filed." *See id.* Further, subsection (h) explicitly references "a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name . . . ." Fed. R. Civ. P. 4(h).

13

Thus, to be subject to the waiver provisions of Rule 4(d), a defendant must be an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—or a corporation, partnership, or other association. *See* Fed. R. Civ. P. 4(d) advisory committee's note to 1993 amendment ("The request for waiver of service may be sent only to defendants subject to service under subdivision (e), (f), or (h). The United States is not expected to waive service for the reason that its mail receiving facilities are inadequate to assure that the notice is actually received by the correct person in the Department of Justice. The same principle is applied to . . . officers of the United States and to other governments and entities subject to service under subdivision (j)."). Defendant here is a state government official sued in his official capacity. (*See* ECF No. 1 at 6 ¶ 24 ("Defendant Crouch is sued only in his official capacity as the government official with overall executive authority over DHHR . . . .").) Rule 4(j) sets out the requirements for service of government officials. *See* Fed. R. Civ. P. 4(j)(2); *see also Chapman v. N.Y. State Div. for Youth*, 227 F.R.D. 175, 179–80 (N.D.N.Y. 2005) (noting that service upon employees of state agencies is governed by Rule 4(j) when they are sued in their official capacity and that such a government official is not subject to the waiver of service mandate in Rule 4(d)). As such, Defendant was not required to waive service under Rule 4(d)(1). *See Moore v. Hosemann*, 591 F.3d 741, 747 (5th Cir. 2009) ("[A] state official sued in his official capacity is not subject to the mandatory waiver-of-service provisions of Rule 4(d)."), *cert. denied*, 560 U.S. 904 (2010); *see also* 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1092.1 (4th ed. 2017) ("Waiver of service may not be requested of . . . states, or local governments (governed by Rule 4(j)) . . . . Rule 4(d) simply is not applicable to these categories of defendants."). Accordingly, the Court agrees with Defendant that he was not required to waive service and cannot

be ordered to reimburse DRWV for costs or attorney's fees associated with either proper service under Rule 4(j) or the filing of the current motion.

## IV. CONCLUSION

For the reasons set for above, the Court **GRANTS** Defendant's Motion to Dismiss, (ECF No. 11), and **DENIES** Plaintiff's Motion for Award of Service Expenses and Attorney Fees, (ECF No. 21). The Court further **DISMISSES** this case and **DIRECTS** the Clerk to remove this action from the Court's docket.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: December 6, 2017

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE